**IN RE: VITAMINS ANTITRUST CLASS ACTIONS, et al.,**

Nos. 99–7256, 99–7281.

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 2000.

Decided June 9, 2000.

Elaine Metlin argued the cause for appellants Agri Beef Company, et al. With her on the briefs were C. Brooks Wood, Kenneth L. Adams, James van R. Springer, Gerald G. Saltarelli, Mary Martin, James Morsch, Michael C. Manning, Jenny J. Clevenger and John J. Rosenthal. Carmine R. Zarlenga entered an appearance.

C. Brooks Wood argued the cause for appellant Nutra–Blend, L.L.C.

Stephen Susman argued the cause for appellees. With him on the brief were Michael D. Hausfeld, Ann C. Yahner, David Boies, Robert Silver, Jonathan D. Schiller, William A. Isaacson, Tyrone C. Fahner, Andrew S. Marovitz, D. Stuart Meiklejohn, Lawrence Byrne, Bruce L. Montgomery, Michael L. Denger and John M. Majoras. George T. Manning entered an appearance.

Before: WILLIAMS, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Over the 1990s, and even farther back, vitamin manufacturers allegedly fixed prices on bulk vitamin sales in violation of the antitrust laws. By September 1999 a Department of Justice investigation had secured guilty pleas from several major suppliers. Dozens of private antitrust actions followed, and by late November 1999 approximately 49 cases were pending before the district court.

At a status conference for all interested parties on November 3, 1999, counsel for the proposed representatives of a broad class of purchasers revealed that they had reached a tentative settlement that would dispose of the class's claims against seven of the defendants (who together with their affiliates account for more than 90 percent of the bulk vitamins market). The then-draft agreement contained a so-called "most favored nation" ("MFN") clause, requiring defendants to hike their payments to the class in the event that within two years of that date they reached a more favorable settlement with a plaintiff who had opted out of the class. See Settlement Agreement ¶¶ 1, 22. Appellants—who were then presumptive members of the class but who have since opted out—moved to intervene under Federal Rule of Civil Procedure 24 for the limited purpose of opposing the MFN clause. They argued—reasonably enough—that the clause would make it harder for them to arrive at an independent settlement, because it would raise the cost to defendants of any more favorable agreement. The district court denied the appellants' motion to intervene but granted them leave to participate as amici curiae. Appellants filed timely notices of appeal from denial of the motion to intervene.

While this appeal was pending, appellants all chose to opt out of the class action. See Tr. of Oral Arg. (Apr. 3, 2000), at 4. The district court held its final hearing regarding class certification and the proposed settlement, and on March 31, 2000 certified the class and approved the settlement. Neither of those decisions is at issue in this appeal.

In rejecting appellants' motion for intervention, the district court reasoned that they lacked standing to challenge the settlement agreement on the grounds asserted. We agree.

\* \* \*

■ Appellants focus on their claim to intervention as of right. Federal Rule of Civil Procedure 24(a)(2) allows such intervention for anyone who "claims an interest relating to the . . . transaction which is the subject of the action and . . . is so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest, unless [his] interest is adequately represented by existing parties." *Id.* Appellants argue that their interest in being able to opt out of the class and to " 'go it alone' unhampered by any judgment in the class action" qualifies as "an interest relating to the . . . transaction which is the subject of the action." Fed.R.Civ.P. 24(a).

But appellants trip immediately over our decision in *Mayfield v. Barr*, 985 F.2d 1090 (D.C.Cir.1993). There we held that class members who have opted out of a 23(b)(3) class action have no standing to object to a

subsequent class settlement; by opting out they "escape the binding effect of the class settlement." *Id.* at 1093. We distinguished cases in which plaintiffs lost claims involuntarily, and concluded:

> Our decision rests on the principle that those who fully preserve their legal rights cannot challenge an order approving an agreement resolving the legal rights of others.

*Id.* Compare *New Mexico ex rel. Energy & Minerals Dep't v. United States Dep't of the Interior*, 820 F.2d 441 (D.C.Cir.1987), in which we concluded that dismissal of the intervening Navajo Tribe's complaint was proper because the settlement reached by the other parties "d[id] not serve to dispose of the Tribe's claims." *Id.* at 445.

Appellants point to a number of cases in which we indicated a willingness to construe Rule 24(a)'s "interest" requirement liberally. See *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C.Cir.1985); *Foster v. Gueory*, 655 F.2d 1319, 1324–25 (D.C.Cir.1981); *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C.Cir.1969) (plurality opinion); *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967). But of all these, only *Nuesse* even addressed the issue of standing. Thus, because decisions that depend on a merely assumed jurisdiction have no precedential value on the jurisdictional issue, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Lewis v. Casey*, 518 U.S. 343, 352 n. 2, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), only *Nuesse* could assist appellants. But *Nuesse* affords them no help, as there the court found on the specific facts a sufficient interest for standing in the stare decisis effect of a judgment, an analysis that has no parallel here.

Standing, of course, is issue-specific. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571–78 & nn.7–8, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). And as we noted in *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C.Cir.1998), potential intervenors must demonstrate "prudential" as well as constitutional standing.

*Id.* at 1074–76. In the case of statutory rights, this requires would-be intervenors to show that their interests are "arguably within the zone of interests to be protected or regulated by the statute." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Even if a particular litigant is outside the class for whose benefit the statute was enacted, that litigant retains prudential standing so long as "its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not more likely to frustrate than to further ... statutory objectives." *Mova Pharmaceutical*, 140 F.3d at 1075 (internal quotation marks omitted).

But as appellants' counsel admitted at oral argument, their interests are not congruent with the interests of the settling class that were in play at the time of their motion to intervene. See Tr. of Oral Arg. at 13–14. As opt-out plaintiffs they have no interest in the specifics of the settlement except for their desire to be free of a troublesome MFN clause. *Id.* at 14.

Appellants' MFN objection is, moreover, incongruent with the interests that the rules charge the district court with addressing. When appellants moved to intervene, the court had remaining before it the questions of whether (1) the proposed class satisfied the prerequisites for certification under Rule 23(a) and (b), (2) the form and manner of notice satisfied Rule 23(c), and (3) the proposed settlement satisfied the requirements of Rule 23(e). Appellants' arguments against the MFN clause have no logical relationship to any of these. The first two questions are clearly irrelevant to appellants' claims. Appellants do not seek to argue that the proposed class failed to satisfy the conditions for class certification. See Fed. R.Civ.P. 23(a), (b)(3). And appellants' Rule 23(c) arguments—which are treated more fully below—do not challenge the form and manner of notice at all.

On the subject of class viability an extra word is needed for appellant Nutra–Blend. According to its complaint, some of the settling defendants compete with Nutra–Blend, selling mixed vitamin products at retail prices below their wholesale charges for the raw components and thus subjecting Nutra–Blend to a "price squeeze." Accordingly it has argued that the class representatives do not adequately represent its interests. This of course sounds like the inquiry under Rule 23(a)(4) as to adequacy of representation. But Nutra–Blend's objections were not made on the premise assumed by Rule 23(a)—namely, that the prospective class member would be *bound* by the ensuing litigation supposedly conducted on its behalf.[1]

█ Of course, in passing on the proposed settlement agreement, the district court has a duty under Fed.R.Civ.P. 23(e) to ensure that it is fair, adequate, and reasonable and is not the product of collusion between the parties. See *Pigford v. Glickman*, 206 F.3d 1212, 1215 (D.C.Cir. 2000); *Thomas v. Albright*, 139 F.3d 227, 231 (D.C.Cir.1998). Thus Rule 23(e) provides a check against settlement dynamics that may "lead the negotiating parties—even those with the best intentions—to give insufficient weight to the interests of at least some class members." Manual for Complex Litigation (Third) § 30.42, at 238–40 (1995); see also *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621–22, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting the dangers that can arise owing to the usually non-adversarial posture of a Rule 23(e) hearing). But the district court's duty is to the class members themselves; it lacks the power to conduct a free-ranging analysis as to the broader implications of the proposed settlement agreement. Compare *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 248 (7th Cir.1992) ("Nor do we know of any cases finding standing for a

non-settling party because a settlement is allegedly illegal or against public policy.") (cited with approval in *Mayfield v. Barr*).

Appellants' only mention of the class's interests appears in a footnote in which they argue that the class will not actually benefit from the MFN clause. But even here they do not say that its inclusion actually harms the class members. Of course they might argue that in securing the MFN clause the class representatives must have traded away some alternative (and real) advantage. But that argument's force would turn on a showing that defendants seriously resisted the clause, on which appellants offer no evidence. In fact the defendants may well not have much resisted, affirmatively liking a Ulysses-tied-to-the-mast arrangement that enables them to convincingly stiff opt-outs who demand more. Cf. Decl. of William M. Landes at 8–9 (excerpted at Joint Appendix 246). In any event, appellants do not deny that their sole actual concern is that the MFN clause limits their ability to reach a settlement more lucrative than that offered to the class. Consequently, their arguments fall outside of the zone of interests protected by Rule 23(e).

Appellants' alternative tack invokes their right to opt out, starting with the notice protections of Rule 23(c)(2). But the rule by its terms is purely procedural. Any substantive right to be free of ancillary effects flowing from a class settlement must be found elsewhere.

█ Appellants next look to the Due Process Clause (presumably of the Fifth Amendment) for their claimed right to be free of any effects of the class settlement. It is, of course, not in dispute that notice and an opportunity to opt out are requirements of due process—for any party to be bound by the litigation. See Fed.R.Civ.P.

---

1. We have no occasion to decide whether a party must remain within the class to intervene for the purposes of challenging class certification under Rule 23(a), (b), or settlement under 23(e). Cf. *In re Brand Name*

*Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 457 (7th Cir.1997); 3 Herbert Newberg & Alba Conte, Newberg on Class Actions § 16.18, at 16–99 to 16–100 (3d ed.1992).

23, Advisory Committee Notes to the 1966 Amendment for Subdivision (d)(2) ("This mandatory notice pursuant to subdivision (c)(2) ... is designed to fulfill requirements of due process to which the class action procedure is of course subject."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 817, ——, 119 S.Ct. 2295, 2314–15, 144 L.Ed.2d 715; *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

█ Indeed, as *Mayfield* makes clear, one may challenge a settlement agreement to which he is not a party if the agreement will cause him " 'plain legal prejudice,' as when 'the settlement strips the party of a legal claim or cause of action.' " *Mayfield*, 985 F.2d at 1093 (quoting *Agretti*, 982 F.2d at 247); see also *Alumax Mill Prods. v. Congress Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir.1990) (allowing nonsettling defendant to challenge a partial settlement that dismissed with prejudice its cross-claims and stripped it of indemnity and contribution rights). But the MFN clause here causes no plain legal prejudice. Although the alleged injury is more substantial than that claimed by the nonsettling plaintiffs in *Mayfield*, here as there the nonsettling plaintiffs have fully preserved their "right to litigate their claims independently." 985 F.2d at 1093.

Other cases have turned on a similar understanding of "plain legal prejudice." In *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230 (7th Cir.1983), cited with approval in *Mayfield*, a settlement required a participant not to "voluntarily" participate in the continuing litigation. The court insisted that the non-settling party show "plain legal prejudice," a formula it took from its cases interpreting Federal Rule of Civil Procedure 41(a)(2). 724 F.2d at 1231. It found none, even though that party clearly had had reason to expect advantageous cooperation from the settling party, and the settlement restriction would require it to incur the burden of a lawsuit to extract whatever cooperation it was legally entitled to. *Id.* at 1234. Similarly, in *Agretti*, 982 F.2d at 247–48, the court ruled that a

party to a contract had no standing to challenge a settlement agreement in which a settling party on the same side agreed to declare the contract void. Because the nonsettling party retained the right to assert that the contract was valid and enforceable, it suffered no plain legal prejudice, despite the obvious practical burden of having its contractual partner disavow the contract. See *id.* at 248. The settlement limitations imposed by the MFN clause are no more onerous than the burdens imposed on non-settling parties in these cases.

█ Finally, we turn to appellants' argument that the district court abused its discretion in denying them permissive intervention under Rule 24(b)(2). Although the denial of a motion for permissive intervention is not normally appealable in itself, see *Twelve John Does v. District of Columbia*, 117 F.3d 571, 574 (D.C.Cir.1997), we may exercise our pendent appellate jurisdiction to reach questions that are "inextricably intertwined with ones over which we have direct jurisdiction." *Id.* at 574–75. Here the basis for appellants' motion for permissive intervention is the same as the basis for its quest for intervention as of right. The two are in that respect inextricably intertwined.

█ But there is uncertainty over whether standing is necessary for permissive intervention. Compare *EEOC v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1045–46 (D.C.Cir.1998) (recounting that Rule 24(b) requires would-be intervenors to have "an independent ground for subject matter jurisdiction" on a claim or defense that shares a common question with the claims of the original parties), and *Diamond v. Charles*, 476 U.S. 54, 76, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (O'Connor, J., concurring) ("The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending lawsuit"); with *National Children's Ctr.*, 146 F.3d at 1045–46 (noting

that our circuit precedent avoids "strict readings of the phrase 'claim or defense,' allowing intervention even in 'situations where the existence of any nominate "claim" or "defense" is difficult to find.'" (quoting *Nuesse*, 385 F.2d at 704)). And *Steel Co.* precludes us from reaching merits issues in the absence of jurisdiction. See 523 U.S. at 94, 118 S.Ct. 1003. Of course if standing is required, then what we have said above clearly precludes appellants' success on this theory as well. If it is not, then appellants would have to show that the trial court abused its discretion in denying intervention but granting them *amicus* status—enabling them to elucidate the court on their position with less risk of delaying the settlement. In view of the unresolved standing issue, however, we think it inappropriate to exercise our pendent jurisdiction.

\* \* \*

The district court's decision is

*Affirmed.*