# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 20, 2012          Decided January 4, 2013

No. 11-5274

IN RE: ENDANGERED SPECIES ACT SECTION 4
DEADLINE LITIGATION - MDL NO. 2165,

WILDEARTH GUARDIANS AND CENTER
FOR BIOLOGICAL DIVERSITY,
APPELLEES

SAFARI CLUB INTERNATIONAL,
APPELLANT

v.

KENNETH LEE SALAZAR AND UNITED STATES
FISH AND WILDLIFE SERVICE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-mc-00377)

———

*Douglas S. Burdin* argued the cause for appellant. With him on the briefs was *Anna M. Seidman*.

*Nicholas A. DiMascio*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief was *Joan M. Pepin*, Attorney. *Ellen J. Durkee* and

*Sambhav N. Sankar*, Attorneys, entered appearances. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*James Jay Tutchton* and *Amy Atwood* were on the brief for appellees Center for Biological Diversity, et al. *Melissa A. Hailey* entered an appearance.

Before: ROGERS and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Center for Biological Diversity and the WildEarth Guardians sued to compel the Secretary of the Interior and the U.S. Fish and Wildlife Service (together, the "Service") to comply with deadlines set forth in the Endangered Species Act, 16 U.S.C. § 1533(b)(3), for determining whether to list species as endangered or threatened. As the cases neared settlement, the Safari Club International ("Safari Club") moved to intervene pursuant to Federal Rule of Civil Procedure 24 in order to oppose the settlements which would include three species that its members hunt. The district court denied intervention and approved the settlement agreements. On appeal, the Safari Club contends it qualified for intervention as of right, as well as permissively. We affirm.

**I.**

The Endangered Species Act ("ESA") was enacted, in part, "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). Species receive protection pursuant to a listing process commenced either by the Service, acting on behalf of

the Secretary of Interior, or by petition of an interested party. *Id*. § 1533(a), (b)(3)(A). If the Service determines that listing a species is warranted, it must proceed by rulemaking. *Id*. § 1533(b)(3)(B)(ii), (b)(5)-(6). The Service must make the decision to formally list a species "solely on the basis of the best scientific and commercial data available," and upon consideration of any of five factors. *Id.* § 1533(a)(1), (b)(1)(A). The ESA's protections apply only after a species is formally listed. *Id.* § 1538(a). Those protections make it unlawful to "take" any listed species, *id.* § 1538(a)(1)(B), which includes hunting, *id.* § 1532(19). Neither the ESA nor the implementing regulations prohibit hunting of species prior to formal listing, including those determined to be warranted-but-precluded candidates for listing.

The ESA also establishes timetables for the Service to act on petitions. First, "[t]o the maximum extent practicable, within 90 days after receiving" a petition, the Service "shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A) (the "90-day finding"). Second, "[w]ithin 12 months after receiving a petition . . . indicating that the petitioned action may be warranted, the [Service] shall make one of the following findings": (1) the petitioned action is not warranted, (2) the petitioned action is warranted, or (3) the petitioned action is warranted but "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species" and "expeditious progress is being made to add qualified species to either of the lists." *Id.* § 1533(b)(3)(B). Third, the Service must annually review its warranted-but-precluded findings as if they were resubmitted petitions. *Id.* § 1533(b)(3)(C)(i), (b)(3)(B)(iii).

The Service annually publishes a Candidate Notice of Review ("CNOR"), which includes findings on species for which the Service has determined listing is warranted but precluded. This notice responds to petitions to list species as well as the Service's own identification of species suitable for listing. *See, e.g.*, 2011 CNOR, 76 Fed. Reg. 66370 (Oct. 26, 2011); 2010 CNOR, 75 Fed. Reg. 69222 (Nov. 10, 2010). As explained in the 2010 CNOR, "[a] candidate species is one for which [the Service has] on file sufficient information on biological vulnerability and threats to support a proposal to list as endangered or threatened, but for which preparation and publication of a proposal is precluded by higher priority listing actions." 75 Fed. Reg. at 69222. Over the years, the number of warranted-but-precluded findings has outpaced the number of listings, creating a backlog of candidate species – 251 species as of the end of 2010. *See id.* at 69222-24, 69229-31. At the end of the end of 2007, the average delay in candidate species listings was 10.6 years.

In June 2010, the Judicial Panel on Multidistrict Litigation consolidated a dozen lawsuits filed by the Guardians and the Center against the Service, and transferred the cases to the district court in the District of Columbia. Within a year, two settlement agreements emerged:

■ On May 10, 2011, the Guardians and the Service reached an agreement, and the Guardians moved for approval of a consent decree. Under the agreement, the Service committed to adhere to its fiscal year 2011 and 2012 work plans, submit either a proposed rule or a not-warranted finding for the 251 species on the 2010 CNOR by September 2016, in accordance with certain benchmarks, and meet specific deadlines for findings on several candidate species. In return, the Guardians agreed to dismiss their claims in the multidistrict litigation as well as several other cases, not to file any lawsuit to compel

compliance with the statutory deadlines or challenge any warranted-but-precluded finding before March 31, 2017, and not to submit more than 10 new petitions annually until September 30, 2016.

■ On June 16, 2011, the Center and Service reached a tentative agreement. Under the agreement, the Service committed to make certain 90-day and 12-month findings by the end of fiscal year 2011 or 2012 and to submit either proposed rules or not-warranted findings for certain candidate species by specific deadlines, while reserving discretion as to the substance of those decisions. The Center agreed to dismiss its claims in the consolidated cases and several other lawsuits, and to the extension of most deadlines set in the agreement if the Center exceeded specified limitations on its ability to sue the Service. The agreement was filed in the district court on July 12, 2011.

The Safari Club moved to intervene, pursuant to Rule 24, on June 27, 2011, in order "to oppose and defeat the settlement[s]." Safari Mot. to Intervene at 19. The three species of concern to the Safari Club appear on the 2010 CNOR list: the New England cottontail, the greater sage grouse, and the lesser prairie-chicken.[1] Under the Guardians' agreement, the Service must list the candidates on the 2010 CNOR as endangered or threatened or find their listing not warranted by September 30, 2016. Both settlements call for the Service to act on the

---

[1] Attached to the motion to intervene were declarations of four members of the Safari Club attesting that they hunted (1) greater sage grouse for at least the last five years and had plans to hunt them again, *see* Decl. of Rew Goodenow, June 15, 2011; Decl. of Philip Spulnik, June 15, 2011; (2) New England cottontails for many years and had plans to continue to do so, *see* Decl. of Charles Souza, June 19, 2011; and (3) the lesser prairie-chicken for years and intended to do so again, *see* Decl. of Robert Robel, June 21, 2011.

petitions for the greater sage grouse and New England cottontail by the end of fiscal year 2015; and for the lesser prairie-chicken, by November 29, 2012.

The district court denied intervention, finding the Safari Club lacked standing to intervene as of right and that permissive intervention at this late date would cause undue delay and prejudice the parties, and approved the settlement agreements. *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1 (D.D.C. 2011) ("*Section 4 Deadline Litig.*"). The Safari Club appeals. This court has jurisdiction over the appeal of the denial of intervention as of right, *see Alt. Research & Dev. Found. v. Veneman*, 262 F.3d 406, 409 (D.C. Cir. 2001), and may exercise supplemental jurisdiction in some instances over the appeal of a denial of permissive intervention, *see In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000). Our review of the district's court's determination on standing is *de novo*. *See, e.g.*, *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 937 (D.C. Cir. 2004).

## II.

Rule 24(a) provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *Mova Pharm. Corp. v. Shalala*,

140 F.3d 1060, 1074 (D.C. Cir. 1998). This court has held that a movant seeking to intervene as of right must additionally demonstrate Article III standing. *See United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009); *Fund for Animals*, 322 F.3d at 731–32; *Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir. 1998); *Mova Pharm.*, 140 F.3d at 1074; *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). "[T]he underlying rationale for this requirement is clear: because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994).

To demonstrate its standing, the Safari Club invokes the procedural rights doctrine, contending that the settlement agreements "establish an illegal procedure — the elimination of the Service's statutory authority to find that a proposal to list a species is warranted but precluded by higher priorities." Appellant's Br. 28. It maintains that it has shown standing because "this illegal procedure is likely to lead to the listing of three game species," which "would end the hunting and sustainable use conservation of these species by Safari Club and its members." *Id*. Put otherwise, the Safari Club asserts an interest in hunting the three species during the Service's delays in listing those candidate species.

The Supreme Court has afforded special treatment to procedural injuries under Article III, noting that "[t]here is much truth to the assertion that 'procedural rights' are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992). The doctrine "loosen[s] the strictures" of the standing inquiry,

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009), by relaxing the immediacy and redressability requirements, *Lujan*, 504 U.S. at 572 n.7. An individual can enforce his procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Id*. at 573 n.8. As explained by this court, the doctrine "relieves the plaintiff of the need to demonstrate that (1) the agency action would have been different but for the procedural violation, and (2) . . . court-ordered compliance with the procedure would alter the final result." *Nat'l Parks Conserv. Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005) (citation omitted). It has treated "[t]he hypothetical in footnote 7 of *Lujan* [as] represent[ing] the archetypal procedural injury: an agency's failure to prepare a statutorily required environmental statement before taking action with potential adverse consequences to the environment." *Nat'l Parks Conserv. Ass'n*, 414 F.3d at 5. In that hypothetical, "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Lujan*, 504 U.S. at 572 n.7.

The Safari Club has neither identified a statutory procedure that the settlement agreements require the Service to violate, nor shown that the warranted-but-precluded finding is designed to protect its interest in delaying formal listing. First, it has not shown that the agreements cause the Service to violate any ESA-mandated procedure. Rather, as the Service puts it, the agreements are "an exercise — not an abdication — of the Service's authority under the ESA." Fed. Appellees' Br. 13. The Service has set a schedule for addressing all candidate species on the 2010 CNOR and therefore, by the dates set in the

agreements, will not continue to find listing those species to be precluded. *See id.* The Safari Club's position presumes that before the Service can propose to list a species, the ESA requires it first to decide whether listing is precluded. The ESA includes no such procedure. Although the Service must make one of three findings — that listing a species is not warranted, is warranted, or is warranted but precluded — within twelve months after receiving a petition for listing, 16 U.S.C. § 1533(b)(3)(B), the ESA does not require the Service to find that listing a species is precluded under any specific circumstances. Instead, the ESA instructs the Service to make one of the three findings, of which warranted-but-precluded is one. Additionally, the Service may propose to list any qualified species on its own initiative, and the ESA does not condition that authority on findings concerning preclusion. *See* 16 U.S.C. § 1533(a).

Furthermore, Congress has authorized judicial review of only not-warranted and warranted-but-precluded findings, but not warranted findings. 16 U.S.C. § 1533(b)(3)(C)(ii). Its failure to provide for such review indicates it is foreclosed*. See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Instead, a person aggrieved by a warranted finding may challenge the Service's final rule listing the species. *See, e.g.*, *Bldg. Indus. Ass'n v. Norton*, 247 F.3d 1241 (D.C. Cir. 2001). Thus, as the Safari Club as much as admits, *see* Appellant's Br. 29, 42; Oral Arg. Tape. 8:04-37, when the Service proposes to formally list a species that is on the 2010 CNOR, the ESA provides no means for the Safari Club to assert that formal listing of the species is precluded. Congress' failure to provide the Safari Club with a means to require continued warranted-but-precluded findings reinforces the conclusion that the ESA contains no such procedural right.

Second, the Safari Club has failed to demonstrate that the warranted-but-precluded procedure is "designed to protect some threatened concrete interest of [its] that is the ultimate basis of [its claim of] standing." *Lujan*, 504 U.S. at 573 n.8. In *Center for Law & Education v. Dep't of Education*, 396 F.3d 1152, 1152 (D.C. Cir. 2005), several advocacy organizations and a parent sued the Department of Education challenging the composition of a rulemaking committee required by the No Child Left Behind Act. The court held that the organizations lacked standing because the procedures for the rulemaking process were not designed to protect their interests. *Id.* at 1157. As to the individual plaintiff, the court questioned whether the procedures were "'designed to protect' the interests of parents and students,'" *id*., noting that Congress' concern was that the process "'be conducted in a timely manner'" and "did not endorse 'protective' litigation regarding the formation of the committee amidst the time-limited rulemaking process," *id.* So too here.

The Safari Club seeks to delay listing of three species that its members hunt while the structure of the ESA's listing procedures indicates that Congress did not endorse suits to forestall listing decisions. As the Service points out, this is apparent from both the judicial review provision, which does not authorize review of warranted findings, and the warranted-but-precluded provision, which requires the Service to find that the Service is making "expeditious progress . . . to add qualified species" to the lists of endangered and threatened species. 16 U.S.C. § 1533(b)(3)(B)(iii)(II). Other circuits have observed that Congress' purpose in enacting the ESA provisions setting the timetables for the Service, of which the warranted-but-precluded provision is a part, was "to facilitate the addition of endangered species to the endangered species list." *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1401 (9th Cir. 1995). The Ninth Circuit referenced the legislative history indicating

concern about "'the decline in the pace of listing species . . . in recent years,'" *id.* at 1400 (quoting H.R. REP. NO. 97-567 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2807, 2809), and noted that in the 1982 amendments Congress sought "'to expedite the decisionmaking process and to ensure prompt action in determining the status of the many species which may require the protections of the Act.'" *Id.* (quoting H.R. CONF. REP. NO. 97-835 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2807, 2860). Similarly, the Tenth Circuit concluded that in the 1982 procedures Congress sought "to force the Service to act more quickly on petitions to list." *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1253 (10th Cir. 1998), (citing H.R. CONF. REP. NO. 97-835 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2861-62).

It is true that Congress also included "relief valves for the benefit of the Service given its limited resources." Fed. Appellees' Br. 19. These include the provisions for the Service to make a 90 day finding "to the maximum extent practicable" and temporarily excusing the failure to publish a proposed listing rule in the Federal Register if "precluded by pending proposals." 16 U.S.C. § 1533(b)(3)(A), (b)(3)(B)(iii)(I). But there is nothing to indicate that Congress intended these provisions "to allow the Se[rvice] to delay commencing the rulemaking process for any reason other than the existence of pending or imminent proposals to list species subject to a greater degree of threat [that] would make allocation of resources to such a petition unwise." H.R. CONF. REP. NO. 97-835 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2862. Regardless of whether the Safari Club defines its interest as hunting or "sustainable use conservation," Appellant's Br. 30, Congress did not design the procedures the Safari Club invokes to protect its interest in delaying formal listing decisions. Instead, those procedures were designed to expedite the listing process consistent with the Service's available resources. Although the

"designed to protect" inquiry, similar to the zone of interest test, *see Int'l Bhd. of Teamsters v. Peña*, 17 F.3d 1478, 1483–84 (D.C. Cir. 1994), may not be especially demanding, *see, e.g., Shays v. FEC*, 414 F.3d 76, 91 (D.C. Cir. 2005), it cannot plausibly be stretched to encompass situations where an individual interest is contrary to the statutory purpose.

To the extent the Safari Club separately claims that it is injured by denial of a right to comment, *see* Appellant's Reply Br. 5, 8–10, neither the ESA nor the implementing regulations require the Service to invite comment when the it makes a warranted-but-precluded finding. *See* 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.15. The ESA merely requires the Service to publish its warranted-but-precluded findings in the Federal Register. 16 U.S.C. § 1533(b)(3)(B)(iii). And the regulations do not require the Service to publish the CNORs on which the Safari Club appears to claim a right to comment and, indeed, provide that "none of the substantive or procedural provisions of the ESA apply to a species that is designated as a candidate for listing." 15 C.F.R. § 424.15.

Because the Safari Club has failed to identify a violation of a procedural right afforded by the ESA that is designed to protect its interests, *see Center for Law & Educ.*, 396 F.3d at 1157, the district court did not err in ruling that the Safari Club lacked standing and therefore was ineligible to intervene as of right, *see Section 4 Deadline Litig.*, 277 F.R.D. at 7.

## III.

Alternatively, the Safari Club contends that the district court abused its discretion in denying permissive intervention because the claims the Safari Club seeks to raise — the reasonableness, legality, fairness, and public interest of the proposed settlement agreement — share common questions of law and fact with the

district court's consideration of whether to approve the settlement agreements. *See* Appellant's Br. 44 (citing *Citizens for a Better Env't. v. Gorsuch*, 718 F.2d 1117, 1128 (D.C. Cir. 1983)).

Rule 24(b) provides, in relevant part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.

*Id*. Subsection (b)(3) provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

The denial of a Rule 24(b) motion is not usually appealable in itself, although the court may exercise its pendent appellate jurisdiction to reach questions that are "'inextricably intertwined with ones of which we have direct jurisdiction.'" *In re Vitamins*, 215 F. 3d at 31 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 574 (D.C. Cir. 1997)). Here, as in *In re Vitamins*, the basis for the Safari's Club's motion for permissive intervention is the same as that for intervention as of right. To that extent the questions are "inextricably intertwined." *See id.*

It remains, however, an open question in this circuit whether Article III standing is required for permissive intervention. *See id.* at 31–32 (*comparing EEOC v. National Children's Center*, 146 F.3d 1042, 1045–46 (D.C. Cir. 1998) (stating a would-be intervenor needed "an independent ground for subject matter jurisdiction"), and *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring) (observing that "[t]he words 'claim' or 'defense' manifestly refer to the kinds of

14

claims or defenses that can be raised in courts of law as part of an actual or impending lawsuit"), *with National Children's Center*, 146 F.3d at 1045–46 (noting that this circuit avoids strict readings of the phrase "claim or defense," allowing intervention "even in 'situations where the existence of any nominate 'claim' or 'defense' is difficult to find.'" (quoting *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967)))).    The uncertainty about whether standing is required for permissive intervention remains today.  The Safari Club's brief cites only *National Children's Center*, 146 F.3d at 1044, which did not address standing but rather relied on a narrow exception, inapplicable here, to the subject matter jurisdiction requirement, *see id.* at 1046.   *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), precludes a court from reaching the merits issues in the absence of jurisdiction.  If standing is required, then the Safari Club could not succeed on this theory, for the reasons discussed in Part II.  If it is not, then the Safari Club would need to show that the district court abused its discretion in concluding that allowing the Safari Club to intervene this late in the settlement process would cause undue delay and prejudice by forcing the Service to continue to litigate instead of working to meet the agreed upon schedule in the settlement agreements, thereby consuming scarce resources and jeopardizing the settlements. *Section 4 Deadline Litig.*, 277 F.R.D. at 8–9.  This court has long acknowledged the "wide latitude afforded" to district courts under Rule 24(b). *National Children's Center*, 146 F.3d at 1046 (internal citations omitted).  "In view of this unresolved standing issue, however, we think it inappropriate to exercise our pendant jurisdiction."  *In re Vitamins*, 215 F. 3d at 32.

Accordingly, we affirm the decision of the district court without reaching the Safari Club's objections to the settlement agreements.