# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 4, 2015  Decided May 26, 2015

No. 14-5121

NATIONAL ASSOCIATION OF HOME BUILDERS, ET AL.,
APPELLANTS

v.

UNITED STATES FISH AND WILDLIFE SERVICE AND SALLY
JEWELL, IN HER OFICIAL CAPACITY AS SECRETARY, U.S.
DEPARTMENT OF THE INTERIOR,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-02013)

*Rafe Petersen* argued the cause and filed the briefs for appellant.

*Nicholas A. DiMascio*, Attorney, U.S. Department of Justice, argued the cause for appellees.
With him on the brief were *John C. Cruden*, Assistant Attorney General, and *Joan M. Pepin*, Attorney.

Before: BROWN, SRINIVASAN and PILLARD, *Circuit Judges*.

BROWN, *Circuit Judge*: Four associations challenge consent decrees that require the U.S. Fish and Wildlife Service to determine, in accordance with a settlement-defined schedule for action, whether 251 species should be listed as endangered or threatened. Because the associations lack standing to raise their challenge, we affirm the district court's dismissal.

**I**

Under the Endangered Species Act ("ESA" or "Act"), the public may petition the U.S. Fish and Wildlife Service ("Service") to list a particular species as endangered or threatened. The Service is required to determine, within twelve months, if listing is (1) not warranted, (2) warranted, or (3) warranted-but-precluded. 16 U.S.C. § 1533(b)(3)(B). A warranted-but-precluded determination allows the Service to defer action on a candidate species in order to focus agency resources on higher priority determinations. The Service must monitor precluded candidate species and annually revisit the determination. On revisiting, the Service may continue to identify the species as precluded. *See id.* § 1533(b)(3)(C).

"[T]he number of warranted-but-precluded findings has outpaced the number of listings, [and] the backlog of [precluded] candidate species had grown to 251 as of 2010." *Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.*, 34 F. Supp. 3d 50, 54 (D.D.C. 2014). Two environmental groups brought suits seeking "to compel the . . . [agency] to comply with deadlines set forth in the Endangered Species Act." *In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 974 (D.C. Cir. 2013). Under the terms of subsequent settlements, the Service must meet strict deadlines for submitting either a warranted or not-warranted finding for

all 251 candidate species. The Service maintains discretion regarding the substance of each listing determination.

Appellants, four membership associations involved in building and developing land, filed suit under the APA and the ESA's citizen-suit provision, 16 U.S.C. § 1540(g), seeking to set aside the consent decrees implementing the Service's settlements. The district court granted the Service's motion to dismiss for lack of standing. Our review is de novo. *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

**II**

As we have noted, the practical effect of the Service's heavy reliance on warranted-but-precluded determinations was an "average delay in candidate species listings" of more than ten years. *Section 4 Deadline Litig.*, 704 F.3d at 975. Appellants' members were apparently able to exploit this leisurely pace to seek cooperative solutions to the problem of habitat destruction and thus ameliorate the impact of the ESA on their commercial activities. But from the environmentalists' perspective, going slow was a perversion of the Act. Soon after the ESA became law, the Supreme Court recognized that "Congress intended endangered species to be afforded the highest of priorities," and "[t]he plain intent of Congress in enacting th[e] statute was to halt and reverse the trend toward species extinction, whatever the cost." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174, 184 (1978). And the 1982 amendments, which added the warranted-but-precluded procedures, were designed to force the Service to pick up the pace. The consent decrees acknowledge this core purpose.

Appellants assert procedural injuries based on loss of opportunity to comment at the warranted-but-precluded stage, withdrawal of the warranted-but-precluded classification, and

acceleration of final listing determinations. *See generally Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (relaxing certain standing requirements in cases of procedural injury). These theories of procedural harm are foreclosed by binding precedent from our Circuit.

We have previously held there is no procedural right to comment at the warranted-but-precluded stage. *Section 4 Deadline Litig.*, 704 F.3d at 979. There may be benefit in information obtained through comments submitted after species are classified as precluded, but "neither the ESA nor the implementing regulations require the Service to invite comment when [] it makes a warranted-but-precluded finding." *Id.* Appellants likewise have no procedural right against withdrawal of the warranted-but-precluded status or the acceleration of listing determinations. Appellants identify no plausible statutory basis for such rights and fail to show that the procedures are "designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] claim of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n.8 (1992); *Section 4 Deadline Litig.*, 704 F.3d at 978–79 (the only purpose of the warranted-but-precluded provisions is to allow the Service to delay a rulemaking to focus resources on other species facing greater threats).[1] In

---

[1] Appellants argue the procedures need not be designed to protect their members' interests because suit was brought under the ESA's citizen-suit provision, as well as the APA, thus negating the APA's zone-of-interest test. Any negation of the APA's zone-of-interest test is beside the point. Appellants must still satisfy the "irreducible constitutional minimum of [Article III] standing," *Lujan*, 504 U.S. at 560, and "[t]he grant of a procedural right cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of his standing." *Fund*

practice, prolonged delay of final listing decisions may have benefited Appellants' members' interests, but the procedures at issue are not *designed* to protect such interests. The warranted-but-precluded "procedures . . . [are instead intended] to expedite the listing process consistent with the Service's available resources." *Id.* at 979.[2] Unfortunately for Appellants, the warranted-but-precluded determination is a safety valve for the Service, not an escape hatch for beleaguered landowners.

## III

This is therefore "not a 'procedural injury' case." *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013). Appellants must show actual or imminent, concrete and particularized injury-in-fact; causation, such that the injury is fairly traceable to the challenged conduct; and redressability. *See generally Lujan*, 504 U.S. at 572–73.

Appellants assert harm to the property interests of members who own land where subject species or their

---

*Democracy, LLC v. SEC*, 278 F.3d 21, 28 (D.C. Cir. 2002) (internal quotation marks omitted).

[2] Appellants also suggest the Service failed to use the best available science by determining listing priority pursuant to the settlements' schedule. Because the warranted-but-precluded status is not designed to protect Appellants' members' interests, any such failure is not the basis of a valid procedural injury. To the extent Appellants' theory is that later "warranted" determinations were not based on the best available science, this argument is misplaced in a challenge against the consent decrees that includes no challenge to the merits of any listing determination. *Cf. infra* Part III.

habitats are present.[3]  Notably, "[t]he ESA's protections apply only after a species is formally listed," *Section 4 Deadline Litig.*, 704 F.3d at 974, but Appellants do not challenge the warranted determination as to any candidate species.  They instead challenge the consent decrees implementing the Service's settlements.  "[T]he consent decree[s] do[] not require [the Service] to promulgate a . . . [listing] rule." *Perciasepe*, 714 F.3d at 1324 (emphasis omitted).  As in *Perciasepe*, the settlements simply require the agency to render a final listing decision—warranted or not-warranted—using a specific timeline, without dictating the agency's substantive judgment.  Accordingly, Appellants have failed to allege cognizable harm, s*ee id.* at 1324–25; Appellants' "members face only the *possibility* of regulation, as they did before." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 13 (D.C. Cir. 2011).  "Article III standing requires more than the possibility of potentially adverse regulation. . . . That the consent decree[s] prescribe[] a date by which regulation could occur does not establish . . . standing." *Perciasepe*, 714 F.3d 1324–25.

Appellants also contend their members have been harmed because they have expended resources on conservation efforts to reduce risk to candidate species, and the purpose of such expenditures is obviated[4] with the withdrawal of the

---

[3] Appellants specifically claim their members' properties are occupied by, or are habitats suitable for, nine subspecies of Mazama pocket gopher and four Central Texas salamander species.

[4] Although Appellants have understandable concerns about the potentially serious economic ramifications for landowners of a listing under the Act, the ESA has offered limited traction to support weighing such economic factors in some cases. *See, e.g.*, Thomas Sarver, Note, *Salmon, Suckers and Sorrow: Rural Cleansing Under the Shadow of the Endangered Species Act*, 8 DRAKE J. AGRIC. L. 455, 461–65 (2003); Editorial, *Can Congress*

warranted-but-precluded status. Yet, none of the expenditures specifically identified in the complaint and declarations were dictated by the Service. Appellants' members expended resources to satisfy various state and local requirements, *see* Worf Aff. ¶¶ 6–9, or as a voluntary effort to reduce harm in the hopes of persuading the Service that listing was unwarranted. As to state requirements, "independent action of some third party not before the court" is not fairly traceable to challenged actions by the Service. *Lujan*, 504 U.S. at 560.[5] And, as to volitional expenditures, Appellants' members cannot show injury by "inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013).

---

*help the Klamath Basin restore itself?  It must*, OREGONIAN, Nov. 22, 2014 (describing how a 2001 shutoff of the water supply to irrigators in the Klamath Basin caused over $40 million in losses to farmers and ranchers); John Kass, *California Gives Up Its Swatters' Rights*, CHI. TRIBUNE, Sept. 2, 1999 (noting the discovery of perhaps a dozen endangered flies stopped a $500 million building project and cost a hospital about $4 million in added construction costs). *See also San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 593 (9th Cir. 2014) ("We recognize the enormous practical implications of this decision[,] . . . [b]ut the . . . law prohibits us from . . . balanc[ing] the [delta] smelt's interests against the interests of the citizens of California.").

[5] Appellants argue the Service coerced state and local officials, but Appellants' declarations simply indicate that local officials "forward[ed] the proposal to the local [Service] office for comment, notwithstanding the fact that the proposal had already received [state agency] approval." Kaufman Aff. ¶ 19. As the district court concluded, this is insufficient to create an inference of coercion.

**IV**

For the foregoing reasons, the district court's dismissal is

*Affirmed.*