**TWELVE JOHN DOES, et al., Appellees,**

v.

**DISTRICT OF COLUMBIA, et al.,
Appellants/Cross–Appellees,**

**Nathaniel McQueen, et al.,
Appellees/Cross–
Appellants.**

**Nos. 96–5089, 96–5106 and 96–5107.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 14, 1997.

Decided July 1, 1997.

Mary L. Wilson, Assistant Corporation Counsel, Washington, DC, argued the cause for the District of Columbia, et al. With her on the briefs were Jo Anne Robinson, Acting Principal Deputy, Charles L. Reischel, Deputy Corporation Counsel, and Richard Love, Counsel.

Kemi Morten, Washington, DC, argued the cause for appellants Nathaniel McQueen, et al. With her on the brief was Brian Lederer.

Alan A. Pemberton, Washington, DC, argued the cause for appellees Twelve John Does. With him on the brief were Peter J. Nickles and Michael S. Labson.

Before WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

These appeals all arise out of a consent decree entered in 1982 and intended to resolve a suit initially filed in 1979 and refiled later as a class action. The suit sought broad changes in living conditions at the Central Facility at the District of Columbia's prison in Lorton, Virginia. It was one of a number of class actions brought on behalf of prisoners at different Lorton facilities. For a brief description, see *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1134–36 (D.C.Cir.1988).

After the District was exposed to the risk of heavy contempt fines for alleged violations of the 1982 decree, it and the lawyers for the plaintiff class negotiated a settlement under which some of the fines would be held in abeyance and ultimately returned if the District met certain staffing levels at Central. After learning of the proposed settlement, six prisoners at Central filed *pro se* motions in district court, styled motions for a temporary restraining order and a preliminary injunction. Specifically, the motions asked the court to oust class counsel and to substitute therefor Kemi Morten (who later entered an appearance for the dissident inmates), to appoint a receiver to run Central, and to grant a protective order against retaliation. Besides being a lawyer, Morten is executive director of a substance abuse treatment program known as Unfoldment, which once operated at Central.

The court denied the T.R.O. On December 5, 1995 it held a hearing on the preliminary injunction, and Morten represented to the district court that her clients were supported by 1,100 of 1,300 inmates at Central, as evidenced by petitions circulated and signed by the inmates during the month of November after the filing of the motions. The petitions identified the six movant prisoners as representatives of the "Blacktop Coalition," and asked for relief akin to that sought in the motions, plus restoration of the Unfoldment program. Together with some

of the dissident inmates themselves, Morten argued for the self-styled motion for a preliminary injunction, proposing broad changes in conditions at Central, some with only limited reference to the *Twelve John Does* consent decree. She also asked that the dissidents' motion be considered one to intervene in the class action as a subclass, arguing that class counsel and the plaintiffs' committee, the Twelve John Does, no longer adequately represented the inmates' interests.

At the end of the hearing the district court observed that class counsel had said that the Blacktop representatives "will be added to the group who customarily meet with [class counsel], and that is what the court is granting today, and that is all the court is granting today." Asked by Morten about the motion to intervene as a subclass, the court said, "No, denied." In an order filed the next day, the district court formalized its disposition of the motions. Noting that the "motion for a preliminary injunction" was in reality a motion for substitution of counsel and appointment of a receiver, the court denied it, expressing doubt that the signers of the petition were fully informed of the limited nature of the pending case and stating, "In the 15 years since this case began, the Court has had the opportunity to observe the level of representation provided by [class counsel] and is satisfied that the class is receiving legal representation of the highest quality." Order, *Twelve John Does v. District of Columbia,* Civ. Action No. 80–2136 (D.D.C. December 6, 1995) ("December 6, 1995 Order") at 3. The court also reiterated its oral denial of the six dissidents' motion to intervene as a subclass, finding that the "class is receiving quality representation; that class counsel listens to and communicates with members of the class and advocates zealously for the class." *Id.* at 4. The court rejected the notion that class counsel had in any way slacked in pursuit of contempt findings where appropriate, and also said, apropos the dissident inmates' substantive claims, "While inmates have been important to enforcement of the consent decree through reporting to the special officer and to class counsel, many of the concerns stated by the petitioners at the hearing on this

matter are not properly a part of the consent decree." *Id.*

The district court also granted the six dissidents' request for a protective order, of which there had been no mention at the oral hearing. See *id.* at 5.

Both the dissidents and the District moved for reconsideration of the December 6, 1995 Order. The dissidents renewed their request for the relief they had sought but not attained, and the District sought to overturn the one item the dissidents had secured, the protective order. The court denied both motions in an order filed March 4, 1996. *Twelve John Does v. District of Columbia,* Civ. Action No. 80–2136 (D.D.C. March 4, 1996) ("March 4, 1996 Order").

In the meantime, class counsel and the District worked out their resolution of the looming contempt issues, and on February 26, 1996 the court entered a consent order reflecting that agreement. *Twelve John Does v. District of Columbia,* Civ. Action No. 80–2136 (D.D.C. February 26, 1996) ("February 26, 1996 Consent Order"). The dissident prisoners filed a notice of appeal from the entry of the order, which the district court struck on the grounds that they were not parties.

From this tangle of events we have before us three appeals. (1) In No. 96–5106, the dissident prisoners challenge the district court's denial of their motion for reconsideration of its earlier denial of the bulk of the relief they had sought. (2) In No. 96–5107, the dissident prisoners appeal the district court's order striking their notice of appeal of the February 26, 1996 Consent Order. (3) In No. 96–5089, the District of Columbia appeals the court's grant of the protective order and the denial of its motion for reconsideration.

We affirm in Nos. 96–5106 and 96–5107 and reverse in No. 96–5089.

I. The Prisoner Appeals, Nos. 96–5106 and 96–5107

■ Class counsel argue that these appeals are barred by a prior decision of this court and are in any event moot. The claim of bar arises from our disposition of an ap-

peal from the court's *initial* order denying the moving prisoners' motions—recall that in No. 96–5106 they appeal from the district court's denial of the motion for *reconsideration* of that order. In the earlier appeal the prisoners obscurely raised the issue of the denial of their motion to intervene, and in an unpublished order, *Nathaniel El McQueen v. District of Columbia,* 1996 WL 453633, No. 96–5003 (D.C.Cir. July 18, 1996), *reh'g denied,* (D.C.Cir. Sept. 6, 1996), which focussed on the challenge to class counsel and did not mention the intervention issue, we dismissed the appeal for want of a final judgment. The direct appeal from the district court's order denying the prisoners' motion having been ruled interlocutory, class counsel say that this disposes of both appeals. It eliminates No. 96–5106 because that appeal at best replicates the dismissed appeal from the initial order; it eliminates No. 96–5107 because if the dissident prisoners are without party status, the district court was clearly right to strike their notice of appeal.

We need not examine whether the case might fall within one of the exceptions to the doctrine of the law of the case. See *LaShawn v. Barry,* 87 F.3d 1389, 1393 (D.C.Cir. 1996) (noting limited character of exceptions). Compare *Brotherhood of Railroad Trainmen v. B & O R Co.,* 331 U.S. 519, 524–25, 531–32, 67 S.Ct. 1387, 1389–90, 1393, 91 L.Ed. 1646 (1947) (denial of intervention immediately appealable where intervention as of right is sought). The Sixth Circuit has held that where members of a class have unsuccessfully sought to intervene separately but have not appealed the denial, and later seek to appeal a final order, they are entitled to raise the intervention issue on appeal from the final order (even though, by hypothesis, they have not yet acquired party status). *Shults v. Champion International Corp.,* 35 F.3d 1056, 1059–61 (6th Cir.1994). See also *Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988) (non-parties adversely affected by consent decree approving settlement should "seek intervention for purposes of appeal; denials of such motions are, of course, appealable"). We need not consider whether we would adopt the *Shults* approach for a would-be intervenor that had failed to avail itself of an available opportunity for appeal. Where, as here, the would-be intervenors had no earlier opportunity for appeal, they should be able to raise the supposed error in the denial of intervention simultaneously with their appeal of the later appealable order whose imminent entry was precisely the occasion for their intervention effort. Thus, assuming that the movants' appeal in No. 96–5106 is barred by law of the case as to the interlocutory character of the denial of intervention, they remain free to press the intervention issue in their appeal in No. 96–5107, seeking relief from the February 26, 1996 Consent Order.

■ There remains, of course, the question whether the 1996 consent decree itself is a final order or among the exceptional class of interlocutory orders over which we have jurisdiction. The decree mandates certain primary conduct (i.e., conduct in the real world, outside the litigation itself) and in addition modifies the terms of a prior consent decree controlling the defendant's primary conduct. Thus, whether or not final, it qualifies as an order "granting, continuing, modifying, refusing or dissolving injunctions . . . ," for which 28 U.S.C. § 1292(a)(1) provides appellate jurisdiction. See *United States v. Microsoft Corp.,* 56 F.3d 1448, 1455–56 (D.C.Cir.1995).

In exercising jurisdiction over the movants' appeal in No. 96–5107 (attacking the district court's striking of their notice of appeal from the consent decree), of course we have jurisdiction to review the prior rejection of their motion to intervene as a subclass, on which that appeal inextricably depends. This is so regardless of whether we classify the intervention issue as denial of intervention as of right, which is appealable in itself, see *Brotherhood of Railroad Trainmen,* 331 U.S. at 524–25, 531–32, 67 S.Ct. at 1389–90, 1393–94 or as denial of permissive intervention or denial of certification as a subclass, which normally would not be. See *id.; McCarthy v. Kleindienst,* 562 F.2d 1269, 1276 (D.C.Cir. 1977) (denial of class certification normally not immediately appealable). As *Gilda Marx, Inc. v. Wildwood Exercise, Inc.,* 85 F.3d 675 (D.C.Cir.1996), illustrates, our pendent appellate jurisdiction encompasses at least determinations that are inextricably in-

tertwined with ones over which we have direct jurisdiction.

■ Class counsel argues that the movants' appeals are moot because they have been transferred from Central to other facilities. The movants have not legally sought retransfer back to Central, as Morten conceded at oral argument, so it would appear that they no longer have individual interests in conditions at Central.

But the movants have not sought to vindicate only their individual concerns. They also sought to intervene as a subclass. A party certified as class representative may pursue the class claim even after his purely individual claim becomes moot, *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and a named plaintiff who has merely asked for class certification may appeal the denial of class certification even after his individual claim becomes moot, *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–404, 100 S.Ct. 1202, 1208–1212, 63 L.Ed.2d 479 (1980). The Court reasoned in *Geraghty* that the proposed class representative's interest was akin to that of a private attorney general, a right deliberately created in order to make it possible to realize the benefits of the class action form. *Id.* at 403, 100 S.Ct. at 1212. *Geraghty's* logic, in finding that that interest was significant enough to preserve the case from mootness, appears to apply to the interest of a party that has sought to intervene as representative of a subclass. Superficially, it may not seem within the stated purpose of *Geraghty* to allow the representative interest of persons seeking to *splinter* a class to save that splintering effort from mootness. But the use of a subclass makes it possible to preserve the class action form where the named representative cannot be found to adequately represent all the interests in the class, see 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil § 1790 at 276–84 (2d ed.1986); see also *Fink v. National Savings and Trust Co.*, 772 F.2d 951, 960–61 (D.C.Cir.1985) (finding that district judge ought to have considered possibility of subclasses before denying class certification and citing *Geraghty*), so application of *Geraghty* to subclass

claims seems within its spirit. Thus at last we turn to the issue of whether the district court correctly denied the dissidents' motion to intervene as a subclass.

■ We review the decision for abuse of discretion. Because the balance between keeping class litigation manageable and allowing affected parties to be adequately heard turns on a myriad of case-specific facts, the abuse-of-discretion standard governs most of the related issues—the decisions to certify a class, see *Fink*, 772 F.2d at 960, to allow permissive intervention under Fed.R.Civ.P. 24(b), *Hodgson v. United Mine Workers*, 473 F.2d 118, 125 & n. 36 (D.C.Cir.1972), and to allow intervention as of right to the extent that it turns on the adequacy of representation by existing parties, *id.* As Fed. R. Civ. Pro. 23(c)(4)(B) authorizes the district court to create subclasses "when appropriate," it implies the same need for reasonable discretion, even recognizing that any subclass must independently meet the standards for class certification. See 7B Wright et al. § 1790 at 276–85. Particularly as the parties agree that the district court correctly framed the issue as whether the would-be intervenors were adequately represented, cf. *id.* § 1799 at 440–41 ("if the court determines that the nonparty class members are adequately represented, intervention as of right under Rule 24(a) should be unavailable"), the abuse of discretion standard appropriately controls.

■ Among the many factors governing the district court's decision that the prisoners are adequately represented are the quality of class counsel, any disparity in interest between class representatives and members of a would-be subclass, communication between class counsel and the class, and the overall context of the litigation. 7A Wright et al. § 1766 at 297–98, § 1768 at 326. Or, as this court once put it: "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *National Association of Regional Medical Pro-*

*grams, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C.Cir.1976).

In this case, we see no reason not to accept the district court's finding that the members of the class are receiving adequate representation. The dissidents make no real challenge to the general finding of the district judge that class counsel has performed at the highest level. Nor do they argue that their interests are in some fundamental, structural way different from those of the members of the Twelve John Does committee. Cf. *Davis v. Board of School Comm'rs*, 600 F.2d 470, 472 & n. 1 (5th Cir.1979) (upholding denial of intervention in school desegregation suit by persons seeking to represent black professional employees as a subclass in larger class action). In fact, then, the dissidents' claim that they are inadequately represented depends solely on their claims that class counsel has failed to maintain adequate communication with, and to be sufficiently responsive to, members of the class.

Here, of course, the district court's experience overseeing the case for nearly two decades has given it a unique familiarity with the issues and the performance of class counsel. See *McNeil v. Guthrie*, 945 F.2d 1163, 1167 (10th Cir.1991) (noting that district court directly familiar with adequacy of class counsel's representation need not hold hearing on challenges to adequacy). To the extent that the would-be intervenors point to the dispute over the scope of the February 26, 1996 Consent Order as evidence of unresponsiveness, the claim is weak. The district court observed:

> At the hearing held on this motion on December 5, 1995, it became apparent to the Court that petitioners believed they could achieve concessions not contained in the consent decree including: preventing the out of state transfer of inmates; inmate participation in the Central Facility's food preparation and service; and, greater educational and vocational programs.

December 6, 1995 Order at 3 n.2. Although the movants point to general language in the Consent Decree calling for an "effort to develop and to expand the institutionally operated programs at Central," see "Memoran-

dum of Points and Authorities in Support of Motion to Reconsider December 6, 1995 Order," at 19 n.6 (quoting Consent Decree at 32), they appear to recognize that a ban on out-of-state transfers is no more than a possible subject for negotiations to modify the Consent Decree, which could be said of any issue. They see the food preparation proposal as pertinent to the decree only in the sense of lying within its general language on program development. Furthermore, the original lawsuit itself focussed on security issues, chiefly the prevention of inmate-on-inmate violence. See Complaint at 3, 26–28, ¶¶ 1, 84–92, *Twelve John Does v. District of Columbia*, Civ. Action No. 80–2136 (D.D.C. Aug. 20, 1980). Although the complaint described inadequate living conditions, including inadequate and unhygenic food facilities, it did so in the context of the anger that such conditions are likely to engender, with a resulting increase in the risk of violence. See Complaint at 23, ¶ 75. Given class counsel's continuing efforts to secure the District's compliance with specific, numerical criteria provided in the Consent Decree that are directly linked to the original lawsuit, its failure to embrace the dissidents' agenda— even the portions technically within the scope of the original complaint and the 1982 decree—hardly undermines the district court's findings as to adequacy of representation. This is especially true for the first item in the dissidents' proposed consent order, that the court require the District to set aside money specifically for Kemi Morten's Unfoldment program. Joint Appendix at 196–97. It is also true for the second, a food preparation or "culinary arts" program under which prisoners would be paid the minimum wage and the prison members of the Blacktop Coalition would choose the prison guards with whom inmates would work. *Id.* at 197. The movants have by no means shown that counsel's advocacy of the February 26, 1996 Consent Order in preference to the Coalition's agenda was not in the best interests of the class. Cf. *Kincade v. General Tire and Rubber Co.*, 635 F.2d 501, 508 (5th Cir.1981).

Nor have the prisoners made out the other aspects of the claim that there is a failure to communicate, namely, that the named repre-

sentatives and class counsel have lost touch with the class members and are proceeding without appropriate consultations, and that the class members' views are more accurately reflected by the Blacktop Coalition. What sparked the Blacktop Coalition's intervention effort was news of an October 11, 1995 agreement in principle to resolve the dispute over the District's failure to comply with the 1982 decree, as amended. Apart from their attack on its substantive terms (already reviewed), the Coalition complains about inadequate advance consultation over the agreement. But class counsel explained that since the agreement was initially reached at a court hearing, it did not have an opportunity to present it to the class earlier.

There is little information before us about the role of the named representatives. We know that their names were placed under seal by court order—hence the eponymous Twelve John Does Committee—and that the Committee (like the Blacktop Coalition) is a self-constituted body whose membership has evidently changed over the years. But its constitution, however informal, has not sharply constrained class counsel's access to the prison population. Counsel meets as well with other inmates who prove to be reliable sources of information, and has offered to meet with members of the Blacktop Coalition. In addition, class counsel accepts all collect phone calls from Central. There is also a court appointed special officer overseeing implementation of the Consent Decree, who can report any problems in communication either to the court or to class counsel. Thus the movants have not successfully made out a claim of systemic failure of communication.

At the most, the prisoner movants demonstrated that they feel left out of what is clearly a very important matter in their lives; and, of course, the petitions signed by 1100 inmates suggest that the feeling is widespread. But a class action of this sort in any case risks becoming "in ways more akin to congressional hearings than judicial proceedings," *Jones v. Caddo Parish School Bd.*, 735 F.2d 923, 938 (5th Cir.1984) (en banc) (Higginbotham, J., concurring), with every possible issue on the table. As class counsel

is pursuing the interests of the class energetically and skillfully, and much of the Blacktop Coalition's alternative program is outside or marginal to the 1982 consent decree (so that its pursuit would further aggravate the formlessness of the suit), we have no grounds to reject the district court's decision to deny intervention.

II. The District's Appeal, No. 96–5089.

The District objects to the district court's prohibition, in its December 6, 1995 Order, of retaliation against any of the six movants or the 1100 or so inmates who signed the supporting petition. The District's primary claim is (as it was in their motion for reconsideration) that the order was entered without any factual basis, such as evidence of prior retaliatory action, in violation of the Supreme Court's decision in *Lewis v. Casey*, —— U.S. ——, ——, ——, 116 S.Ct. 2174, 2179, 2183, 135 L.Ed.2d 606 (1996), as well as of our own decision in *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C.Cir.1996), antedating *Lewis*, which makes clear that, at least where judicial action aimed at protecting constitutional claims would involve broad control over a local government's management of its affairs, injunctive relief can be granted only if there is "a pervasive pattern ... flowing from a deliberate plan by the named defendants." *Id.* at 1424 (internal quotations omitted).

█ Class counsel, defending the protective order, relies in large part on the ground that until its motion for reconsideration the District did not oppose the movants' request for such an order, either in writing or at the December 5, 1995 hearing. The District retorts that the movants' failure to present any support (or even argument) for the motion led it to believe that the request had been abandoned.

In fact, Local Rule 108(b) of the district court requires that a party respond to a motion within 11 days. If not, "the court *may* treat the motion as conceded." D.C. District Court Local Rule 108(b) (emphasis added). Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule. See *Geller v. Ran-*

*di,* 40 F.3d 1300, 1304–05 (D.C.Cir.1994). Here, however, the district court did not exercise its discretion to treat the motion as conceded, but acted on the merits. Rule 108(b) thus does not appear to be a bar. Cf. *Moy v. Howard University,* 843 F.2d 1504, 1504 (D.C.Cir.1988).

▮ Class counsel makes the related point, however, that the District's failure to object to the lack of fact-finding until the motion for reconsideration waives the argument for appeal. But Rule 60(b)(1) authorizes relief from a judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." In fact, we have construed Rule 60(b)(6)'s catchall provision, allowing correction for "any other reason justifying relief," as calling for relief in extreme cases even where the moving party has been guilty of *in*excusable neglect:

> When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable.

*Computer Professionals for Social Responsibility v. United States Secret Service,* 72 F.3d 897, 903 (D.C.Cir.1996) (quoting and following *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980)). Here the circumstances call for a finding that the District's neglect was excusable.

The primary issue at the December 5, 1995 hearing was the one we have already addressed—whether the movants' claims about adequacy of representation justified either the grant of their motion to intervene as a subclass or any other relief altering the system of representation. No one said a word to support the motion for a protective order. As the hearing drew to a close, the court said that the six dissidents would "be added to the group who customarily meet with [class counsel], and that is what the court is granting today, and that is all the court is granting today"; it also said explicitly that the motion to intervene as a subclass was "denied." Although the motion for a protective order was in a formal sense on the table during the hearing, its proponents never advanced it, and the court unequivocally rejected the idea

that its proponents should have any formal status in the lawsuit. While class counsel had said that it did not *object* to the motion, see Opposition on Behalf of Plaintiff Class to Motion of Pro Se Movants for a Preliminary Injunction, at 1–2, Joint Appendix 100–01, it never offered affirmative support. Thus the motion appeared to be a complete orphan. Indeed, later, in denying the District's motion for reconsideration, the district court relied on its "inherent authority" to issue the order. March 4, 1996 Order at 2. ·In the circumstances the District's silence on the subject was excusable. Finally, once the issue was raised the district court justified its decision issuing the order without factual support by saying it was doing so "prophylactically," *id.,* which suggests that no earlier objection on that ground would have made any difference.

▮ On the merits, class counsel's answer to *Lewis v. Casey* and *Ellis v. District of Columbia* is twofold. First, it points to *Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia,* 93 F.3d 910 (D.C.Cir.1996), where we upheld an anti-retaliation order based on evidence that women "who had filed complaints . . . were occasionally the victims of retaliation." *Id.* at 931. It is unclear why class counsel believes that this supports issuance of an order in the absence of *any* such evidence. Further, although class counsel argues that in *Women Prisoners* the District sought reversal on the theory that there was no evidence of *systemwide* retaliation, the relevant passage of the opinion says nothing of such a claim, or of *Lewis* or *Ellis* (though *Lewis* is noted earlier in the opinion, *id.* at 920, 923).

Second, class counsel argues that a ban on retaliation is free of the demands of *Lewis* because, unlike the order there, it has nothing to do with the management of the prison; it bars only retaliatory conduct that would be illegal in any event. Counsel also points to our decision in *Wagner v. Taylor,* 836 F.2d 566, 571 (D.C.Cir.1987), in which we upheld the district court's jurisdiction to enjoin retaliation by the Interstate Commerce Commission against a Title VII plaintiff who asserted that he might be subject to reprisals pending administrative adjudication of his claim. But a ban on retaliation plainly does

impact the management of the prison. Every act adverse to one of the protected parties (here, almost the entire prison population) creates at least a *risk* of contempt proceedings whose outcome would turn on elusive questions of motivation. As for *Wagner v. Taylor*, it yields no support for the order. Having found district court jurisdiction to provide such relief, 836 F.2d at 570–75, we noted that any decision to actually grant the relief depended on satisfying the usual criteria for injunctions, and affirmed the district court's denial of one, in large part because the plaintiff "offered no supporting evidence" that retaliation was imminent, other than copies of his own complaints, *id.* at 576. Thus the complete absence of factual support for the ban in the record is a fatal deficiency. In these circumstances it was an abuse of discretion for the court to deny the motion for reconsideration. See *Lepkowski v. United States Dept. of Treasury*, 804 F.2d 1310, 1311 (D.C.Cir.1986) (review of Rule 60(b)(1) rulings is for abuse of discretion).

\* \* \*

The district court order against retaliatory action is vacated and the case remanded for further proceedings on that issue; the orders under review are in every other respect affirmed.

*So ordered.*