# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2016         Decided July 21, 2017

No. 15-8009

IN RE: HERMAN BREWER, INDIVIDUALLY AND ON BEHALF OF A
CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED,
PETITIONER

———

On Petition for Permission to Appeal Pursuant to
Federal Rule of Civil Procedure 23(f)
(No. 1:08-cv-01747)

———

*Thomas J. Henderson* argued the cause for petitioner.
With him on the briefs was *David W. Sanford*.

*Joshua M. Salzman*, Attorney, U.S. Department of Justice,
argued the cause for respondent. With him on the brief were
*Benjamin C. Mizer*, Principal Deputy Assistant Attorney
General, and *Marleigh D. Dover*, Attorney.

———

2

No. 16-5285

KEITH HARRINGTON, ET AL.,
APPELLANTS

v.

JEFF SESSIONS, U.S. ATTORNEY GENERAL,
APPELLEE

———

Consolidated with 16-5286

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-cv-01747)

———

Before: BROWN, *Circuit Judge*, and EDWARDS and
GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge*
GINSBURG.

GINSBURG, *Senior Circuit Judge*:    This case comes to the
court on a petition for interlocutory appeal of the district court's
denial of certification for a class consisting of African-
American deputy U.S. Marshals alleging racial discrimination
by the United States Marshals Service (USMS). The district
court denied class certification on the ground that the sole
named plaintiff, Herman Brewer, did not satisfy the adequacy

and typicality requirements of Federal Rule of Civil Procedure 23(a) because, as a former USMS employee, he lacked standing to pursue class-wide injunctive relief.

Brewer petitioned this court for interlocutory review under Rule 23(f) but, while his petition was pending, he settled his individual claims with the Government, and the parties stipulated to the dismissal of the action in district court pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). That rule allows the parties voluntarily to dismiss a suit without a court order by filing a jointly signed stipulation with the court. Upon notice of the stipulation, four current and former deputy U.S. Marshals moved to intervene in this court in order to pursue the petition Brewer had filed to review the district court's denial of class certification.

For the reasons discussed below, we grant the motion to intervene but decline the petition for review as presenting no question that falls within our discretion to hear an interlocutory appeal under the framework announced in *Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98 (D.C. Cir. 2002). We remand the case to the district court to entertain motions to substitute absent class members as named plaintiffs and such further proceedings as may be warranted.

## I. Background

The lengthy and somewhat convoluted history of this case is depicted in the figure below and described in the following paragraphs.



In October 2008 deputy U.S. Marshal David Grogan filed a putative class action against the USMS on behalf of himself and similarly situated current and former African-American deputy U.S. Marshals, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964. Although the suit was also for monetary damages, the class complaint states that "[i]njunctive and declaratory relief are the predominant forms of relief sought . . . because they are absolutely necessary to the cessation of discrimination and elimination of the effects of past discrimination." The current complaint alleges the USMS has violated Title VII through three policies or practices. First, it challenges several features of the USMS's Merit Promotion Plan that allegedly impede the promotion of African-American employees. Second, the complaint claims the Marshals's practice of noncompetitively selecting employees for lateral duty assignments diminishes class members' opportunities for career advancement. Finally, it claims USMS procedures have disproportionately excluded African-Americans from career-enhancing "Headquarter duty assignments."

## A. Herman Brewer

The putative class originally advanced five types of claims, relating to pay awards, training, internal investigations, assignments, and promotions, only the last two of which survive in the current litigation. In 2010 Grogan, the original and then-sole named plaintiff, moved to amend the class complaint to add Brewer and Fayette Reid as class representatives for claims relating to awards, training, assignments, and promotions. The district court granted the motion in relevant part. In 2013 Grogan filed a stipulation of dismissal of his individual claims and dropped out of the action.

Before Grogan exited the litigation, the Government had moved for summary judgment on all claims. Later in 2013 the district court granted the motion in part, eliminating the claims relating to awards, training, and investigations. *Brewer v. Holder*, 20 F. Supp. 3d 4, 17-23 (D.D.C. 2013); *Brewer v. Holder*, No. 08-CV-1747, at 3-4 (D.D.C. Oct. 11, 2013). This effectively eliminated Reid as class representative for her now-dismissed claims relating to awards, training, and assignments. As a result, by October 2013, Brewer was the sole named plaintiff representing only the assignments and promotions claims.

By statute, deputy U.S. Marshals face mandatory retirement at age 57. 5 U.S.C. § 8335(b)(1). Brewer, who turned 57 in July 2013, received extensions totaling eight months and retired from the USMS on March 31, 2014.

Class discovery closed in June 2014, and Brewer filed two motions on July 1, 2014, three months after he retired and more than four years after a deadline set by scheduling orders to

amend the complaint. The first motion sought leave to amend the complaint to substitute four additional plaintiffs as class representatives. The district court denied that motion in April 2015, holding Brewer had not diligently pursued substitution upon notice of his impending retirement and the departure of the other named plaintiffs.

The second motion was for class certification. The Government opposed certification on several grounds. First, it argued the proposed class definition was ambiguous and overbroad. Second, the Government contended Brewer was an inadequate class representative because, as a former employee, he lacked standing to pursue injunctive relief. Third, it pointed to intra-class conflicts between USMS subordinates and supervisors (including Brewer), thereby arguably making him an inadequate class representative. Finally, the Government challenged whether the class complaint satisfied the commonality, typicality, and predominance prerequisites to certification under Rule 23(a) and (b)(3).

In September 2015 the district court denied class certification. Specifically, the court held that, although the complaint sufficiently defined a class of USMS employees, Brewer, as a former employee ineligible for reinstatement, could not adequately represent a class that predominantly sought injunctive relief. Nor were Brewer's individual claims for monetary damages typical of class-wide claims for injunctive relief. Although the court said the "Plaintiffs face a significant challenge in meeting the three remaining prerequisite[s] [other than numerosity]," it did not reach the Government's other challenges "because it is abundantly clear that Plaintiffs' sole proposed class representative cannot adequately represent the class members' interests." The district court further refused to certify a narrower class seeking only

damages, reasoning that doing so would amount to "claim splitting" and risked "jeopardizing the class members' ability to subsequently pursue other claims."

Brewer timely petitioned this court for interlocutory review of the denial of class certification pursuant to Rule 23(f).

## B. Settlement and Intervention

Starting with the denial of Brewer's two July 2014 motions, the history of this case is depicted in the figure below and described in the following paragraphs.



While his petition was pending, Brewer also engaged in confidential settlement negotiations with the Government. They reached an agreement disposing of his individual claims, and on July 22, 2016 Brewer filed a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii). The same day Keith

Harrington, Melanie Thompson, Mariam Rodgers, and Frederick Robinson filed a motion to intervene in order to continue pursuing the petition for interlocutory review in this court. They also moved to intervene in the district court in order to appeal the denial of class certification. Three of the four would-be intervenors are current African-American employees of the USMS, who presumably have standing to seek injunctive relief, and one, like Brewer, is a former employee.

In light of the stipulated dismissal and the motion for intervention, we directed the parties to argue the merits of intervention, of interlocutory review, and of class certification before this court. Following oral argument but while their motion for intervention in the district court remained pending, the intervenors filed with this court a notice of appeal from the stipulated dismissal of Brewer's individual claims, from the order denying class certification, and from the effective denial of their motion for intervention within the time to appeal. They did so in order to meet the 60-day deadline for appeal from a final judgment, which they thought dated from the filing of the stipulated dismissal. On October 25, 2016 the district court issued a minute order dismissing the motion to intervene, reasoning the notice of appeal stripped it of jurisdiction to rule on intervention. As a result of these events, no further claims or motions remain pending in the district court, and the would-be intervenors' petition and appeal from the denial of class certification are pending in this court. On February 2, 2017 the intervenors moved to consolidate Brewer's petition and their appeal. We now address the petition for permission to appeal and the motion for intervention in this court. Addressing these matters disposes of the need to reach the latter appeal.

On the merits, we face, at most, three questions: (1) whether to grant the motion to intervene; (2) if so, whether

to grant the petition for interlocutory review under Rule 23(f); and (3) whether the district court abused its discretion in denying certification of the class of current and former African-American deputy U.S. Marshals. *See Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006) (reviewing the merits of class certification for abuse of discretion).

## II.    Jurisdiction

Before reaching the merits, however, we must assure ourselves of our jurisdiction to decide these questions. The basic problem arises from the series of events described above. First, after the district court denied class certification, only Brewer's individual claims remained pending before that court while he pursued his petition for interlocutory review. Then Brewer settled his individual claims and stipulated to their dismissal, depriving both the district court and this court of any live claims or adverse parties unless one of the two motions for intervention is granted. But in order to grant intervention, either this court or the district court must have jurisdiction over the case, notwithstanding the apparent absence of either live claims or adverse parties at the moment. Thus, the situation may appear to present a Catch-22: Intervention can overcome the apparent jurisdictional problem created by the stipulated dismissal, but a court may grant intervention only if it has jurisdiction to do so. The circle is broken, however, because we have jurisdiction to determine our own jurisdiction, *United States v. Ruiz*, 536 U.S. 622, 628 (2002), and we conclude we have jurisdiction to hear the motion for intervention. *See In re Thornburgh*, 869 F.2d 1503, 1510 (D.C. Cir. 1989) (approving intervention in a class action after the named plaintiff's individual claims were mooted so as to retain jurisdiction over the case).

The jurisdictional question in this case involves two complications, the interaction of which neither this nor any other Circuit court has confronted. First, we must determine the effect of a stipulated dismissal upon a subsequent motion for intervention for the purposes of appealing. Then, we must consider how the only named plaintiff's stipulated dismissal of his individual claims affects whether absent members of a putative class can appeal the denial of class certification. Ultimately, we conclude the answer to these questions is no different for a stipulated dismissal than for a dismissal by court order, after which intervention for the purpose of appealing a denial of class certification is certainly available. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 392-94 (1977).

## A. Stipulated Dismissal and Intervention

We begin with the effect of a stipulated dismissal on the jurisdiction of a federal court to hear a post-dismissal motion for intervention. On this account, one thing is clear both in this Circuit and all others that have addressed the matter: A stipulated dismissal is "effective automatically" upon filing and requires no further action on behalf of a district court in order to constitute a final judgment, ripe for appeal. *In re Wolf*, 842 F.2d 464, 466 (D.C. Cir. 1988) (per curiam) (quoting *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984)); *see also, e.g.*, *State Nat'l Ins. v. County of Camden*, 824 F.3d 399, 406-07 (3d Cir. 2016); *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546-47 (4th Cir. 1993) (applying Rule 41(a)(1)(A)(i)); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277-78 (11th Cir. 2012). Beyond this generally recognized rule, no opinion details with precision the practical effect of a stipulated dismissal upon a district court's jurisdiction. *See, e.g.*, *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461 (5th Cir. 2010) ("a district

court's jurisdiction over a case that is settled and voluntarily dismissed by stipulation cannot extend past the filing date absent an express contingency or extension of jurisdiction") (criticized for its "imprecise language" by *Sommers v. Bank of America*, 835 F.3d 509, 513 n.5 (5th Cir. 2016)); *Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993, 995-96 (6th Cir. 1987) (stipulated dismissal "terminated the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)" (internal quotation marks omitted)); *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011) ("A stipulation of dismissal . . . is self-executing and immediately strips the district court of jurisdiction over the merits").

Some Circuits have reasoned the "jurisdiction-stripping" effect of a stipulated dismissal precludes a district court from taking further action on motions made after, or even before, the dismissal. Those decisions suggest that upon the stipulated or voluntary dismissal of the current parties' claims, a court may lack jurisdiction to review a non-party's motion for intervention. *See Marex Titanic*, 2 F.3d at 545-47; *Bond v. Utreras*, 585 F.3d 1061, 1071-72 (7th Cir. 2009); *United States v. Ford*, 650 F.2d 1141, 1142-43 (9th Cir. 1981) (judicially approved voluntary dismissal). *But see Sommers*, 835 F.3d at 513 n.5 (rejecting this position); *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320-21 (9th Cir. 1997) (same for the effect of a voluntary dismissal by court order under Rule 41(a)(2)).

In our view, a stipulated dismissal, aside from its immediate effectiveness, is no different in jurisdictional effect from a dismissal by court order: Each resolves all claims before the court, leaving it without a live Article III case or controversy. *Cf. Catlin v. United States*, 324 U.S. 229, 233, 236

(1945). The absence of a live controversy, then, not any special feature of a stipulated dismissal, is what deprives the district court of continuing jurisdiction. It follows that any action a court can take despite having dismissed a case as moot, such as substituting an adverse party for a non-adverse party, it can also take following the entry of a stipulated dismissal. *See Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 410 (D.C. Cir. 2001) ("our jurisdiction to review [a denial of intervention] is not affected by the fact that the district court denied intervention after the stipulated dismissal was entered; the dismissal does not render the appeal moot").

Several Circuits have framed the jurisdictional effect of a stipulated dismissal in sweeping terms, *see, e.g.*, *SmallBizPros*, 618 F.3d at 461, but none has suggested that effect is unique to a stipulated dismissal, as opposed to a court-ordered dismissal, *see Ford*, 650 F.2d at 1142-43 (identifying mootness as the reason for the court's lack of jurisdiction to hear a motion for intervention); *Bond*, 585 F.3d at 1071-72 (same for intervenor's lack of standing). Nor is there anything in Rule 41(a)(1)(A)(ii) (stipulated dismissals), or in the remainder of Rule 41 (dismissals in general), that suggests a stipulated dismissal is in any way jurisdictionally unique. *Cf. Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987) (noting "nothing in the language of Rule 41(a)(1)(i) exempts voluntary dismissals from the scope of judicial authority under Rule 60(b)") (cited by *Wolf*, 842 F.2d at 466, as informative on the effect of a stipulated dismissal). [1]

---

[1] There is one way, not relevant here, in which a voluntary dismissal post-settlement pursuant to Rule 41(a) does uniquely affect the jurisdiction of the district court: The court's jurisdiction to enforce a settlement depends upon whether the parties have incorporated it in a judicial order of dismissal under Rule 41(a)(2). *See, e.g.*, *Kokkonen*

Moreover, the Supreme Court has repeatedly advised against giving jurisdictional significance to statutory provisions that do not clearly "speak in jurisdictional terms." *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-16 (2006) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394 (1982). Finally, if a stipulated dismissal deprived the court of jurisdiction to hear a motion for intervention filed by absent members of a putative class, then a class action defendant could simply "'buy off' the individual private claims of the named plaintiffs" in order to defeat the class litigation, a strategy the Supreme Court has said "would frustrate the objectives of class actions" and "waste . . . judicial resources by stimulating successive suits" "contrary to sound judicial administration." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338-39 (1980). For these reasons, we conclude that mootness, albeit accelerated by the immediacy of a stipulated dismissal, is what gives a dismissal pursuant to Rule 41(a)(1)(A)(ii) its jurisdictional effect. And if a motion to intervene can survive a case becoming otherwise moot, then so too can a motion to intervene survive a stipulated dismissal.

## B. Class Certification and Mootness

It is well established that mootness alone does not strip a district (or an appellate) court of jurisdiction to hear a motion to intervene for the purpose of appealing the dismissal of claims pending before the court, provided, of course, the intervenor has an Article III stake sufficient to pursue an appeal. *See Acree v. Republic of Iraq*, 370 F.3d 41, 49-50 (D.C. Cir. 2004); *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir.

---

*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994); *Anago Franchising*, 677 F.3d at 1278-80.

2001); *cf. Bond*, 585 F.3d at 1071-72 (intervention denied post-dismissal due to lack of Article III standing). It is similarly clear that a previously absent class member may have a sufficient interest to appeal the denial of a motion for class certification even if the named plaintiff does not appeal. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997); *McDonald*, 432 U.S. at 392-94; *cf. U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980) (holding even a named plaintiff whose individual claims are moot retains a "personal stake" in representing the class jurisdictionally sufficient to appeal the denial of class certification). This, even though the would-be intervenor-appellant is not a party to the case who could appeal an adverse decision. *See Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) (Posner, J.) ("The courts thus disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs. This may seem irregular; but maybe there isn't really a jurisdictional void, since the class member who steps forward to take the place of the dismissed plaintiff has a real controversy with the defendant.") (internal citations omitted). When an absent plaintiff intervenes to appeal a denial of class certification, he has the same Article III stake on appeal as he would have had in the action had the class been certified. *Cf. Twelve John Does*, 117 F.3d at 575. Because mootness does not preclude intervention for the purpose of taking an appeal and because an appellate court has jurisdiction to hear a would-be plaintiff's appeal from the denial of class certification, we also have jurisdiction under Rule 23(f) to hear the motion to intervene in the interlocutory petition for review of the denial of class certification, notwithstanding the stipulated dismissal of the named plaintiff's claims.

## C. *Microsoft v. Baker*

The Supreme Court's recent decision in *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) does not change this result. In that case, the district court had issued an order striking the class action allegations in the complaint, and the Ninth Circuit denied a petition for interlocutory review. 797 F.3d 607, 611 (2015). The sole named plaintiff then voluntarily stipulated to the dismissal of his individual claims in order immediately to create what under then-controlling Ninth Circuit precedent was a final judgment ripe to appeal the interlocutory order striking the class allegations. *Id.* The court heard the appeal and vacated the order. The Supreme Court reversed, concluding the voluntary dismissal was not a final judgment, as is required to pursue an appeal per 28 U.S.C. § 1291. 137 S. Ct. at 1712-13. The Court reasoned that the "voluntary-dismissal tactic" to precipitate an immediate appeal of class certification despite a prior denial of interlocutory review clashed with the purposes and history of both 28 U.S.C. § 1291 and Rule 23(f) and undermined the usefulness of the latter provision. *Id.* at 1712-15.

The procedural posture and the facts of this case are far different. Here we consider solely a petition for review under Rule 23(f); the statutory issue in *Microsoft* is not present in this case. Furthermore, the equitable and policy considerations at work in *Microsoft* have little force in this case: The plaintiff in *Microsoft* had opportunistically dismissed his individual claims in order to get review of an issue – class certification – for which he had been denied interlocutory review. The would-be intervenors here have not resorted to any questionable tactics. They had no reason to doubt Brewer was adequately representing their interests in seeking interlocutory review – until, that is, they learned he had settled his claims, whereupon

they moved immediately to intervene in order to protect their interests in the 23(f) petition. Indeed, even Brewer, far from being opportunistic, expressed his regret that, despite his years-long effort, he was "unable [to] accomplish the objective for which he risked his career." These legal, procedural, and equitable differences render *Microsoft* inapplicable here. Therefore, sure of our jurisdiction, we turn to the merits of the motion to intervene and the petition for review.

## III.    Intervention of Right

Federal Rule of Civil Procedure 24(a)(2) provides a nonparty may intervene in an ongoing action as a matter of right when it:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

There is no question we may address the question of intervention in the first instance on appeal. "[J]udicial economy is better served by th[e] Court deciding whether appellants have made a sufficient showing under Rule 24" rather than "remanding to the district court for that decision." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). Indeed, we must address the motion for intervention before considering the petition for interlocutory review because only a party may appeal an adverse order. *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (reviewing elements of

Rule 24(a)(2) not reached by district court in order to assure the appellate court of intervenors' status as parties-appellant).

In this case, the need to address the motion to intervene on appeal is paramount. Although the would-be intervenors also have moved to intervene below, the district court dismissed that motion, reasoning that the would-be intervenors' notice of appeal rendered it without jurisdiction to consider their motion to intervene. The intervenors have also appealed the district court's dismissing their motion to intervene. As such, the only live motion to intervene lies before this court. If intervention is denied now (and if we decline to consolidate the petition and the appeal from final judgment), then this court will later face the district court's decision to dismiss the would-be intervenors' second motion to intervene on direct appeal from the final judgment. Either way, this court will address intervention on appeal. "Denial of intervention in the initial review proceedings – and the attendant remand . . . and second appeal to the Court of Appeals – only results in a delay of the time when the disaffected party may seek review." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 212-14 (1965) ("To allow intervention . . . in the first appellate review proceeding is to avoid 'unnecessary duplication of proceedings,' and to adhere to the goal of obtaining 'a just result with a minimum of technical requirements'").

As to the merits of intervention, the prospective intervenors must satisfy the four requirements of Rule 24(a)(2): (1) the motion for intervention must be timely; (2) intervenors must have an interest in the subject of the action; (3) their interest must be impaired or impeded as a practical matter absent intervention; and (4) the would-be intervenor's interest must not be adequately represented by any other party. For its

part, the Government does not meaningfully oppose intervention on the merits but uses its brief in opposition mostly to reiterate its objections to interlocutory review. This approach is particularly problematic because "the burden of proof" on certain aspects of intervention "rests on those resisting intervention." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1390 (D.C. Cir. 1980) (discussing the adequacy of representation). Despite the Government's omission, we consider each of the factors listed above to determine whether the intervenors' motion, accepted as true, meets the standard of Rule 24(a)(2).

*Timeliness.* A nonparty must timely move for intervention once it becomes clear that failure to intervene would jeopardize her interest in the action. *McDonald*, 432 U.S. at 394. As already mentioned, the appellants filed their motion to intervene the same day Brewer filed the stipulation of dismissal. That the intervenors "*could* have intervened earlier," say, after Brewer's retirement or after the denial of class certification, does not mean they "*should* have intervened earlier," making their motion untimely. *See Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014). As with the named plaintiffs in *McDonald*, Brewer had vigorously defended his adequacy to represent the class on the motion for certification and in a subsequent petition for interlocutory review of its denial. 432 U.S. at 388-90. As in both cases, and in *Smoke v. Norton*, 252 F.3d 468 (D.C. Cir. 2001), the inadequacy of the plaintiff to represent the intervenors' interest became certain only when the named plaintiffs decided not to pursue an appeal from an unfavorable decision. *McDonald*, 432 U.S. at 394; *Smoke*, 252 F.3d at 469. Therefore the intervenors' motion was timely.

*Interest.* In order to intervene as a matter of right, a nonparty must claim an interest in the property or transaction

that is the subject of the action. We have recognized such an interest among "persons who allege that they have suffered injury from the same or very similar wrongful acts as those complained of by the original plaintiffs." *Foster*, 655 F.2d at 1324. Because class-wide adjudication of this shared interest is "compatible with efficiency and due process," we have consistently granted motions to intervene as of right in employment discrimination class actions. *Id.* at 1324; *accord Cook v. Boorstin*, 763 F.2d 1462, 1466-70 (D.C. Cir. 1985). Clearly, the would-be intervenors have at least as much at stake in this case as had Brewer.

*Impairment.* In order to intervene of right, a nonparty's interest in the transaction must be one that would be impaired absent intervention. Undue delay or unnecessary litigation burdens have the "practical consequence" of impairing third party interests in the efficient assertion of their rights. *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977) ("questions of 'convenience' are clearly relevant . . . [because the intervenors'] involvement may lessen the need for future litigation to protect their interests"). Although the intervenors might protect their rights "by bringing a separate lawsuit," separate litigation would "be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735. This is especially true here because, in the wake of Brewer's settlement, the adequacy and typicality grounds upon which the district court denied certification are not relevant to whether the same class with a different representative plaintiff would be appropriate. If we were to decline review under Rule 23(f), then the now-mooted questions concerning Brewer's adequacy would come back to us in the would-be intervenors' appeal from the final judgment, further delaying resolution of the issue of class certification, including those questions flagged as

potentially problematic by the district court. *See Brewer v. Lynch*, No. 08-CV-1747, at 15 (D.D.C. Sept. 30, 2015) (addressing only Brewer's adequacy and typicality but noting "Plaintiffs face a significant challenge in meeting the three remaining prerequisite[s]" of class certification). Denying intervention now would push the resolution of these questions further into the future and benefit neither the intervenors, the Government, nor the courts.

*Adequacy.* Intervention of right is appropriate only if the current parties to the case are inadequate to represent the interests of the intervenors. Neither the Government nor the intervenors argue that Brewer remains adequate to pursue this petition or to represent a class of current USMS employees. This alone meets the "minimal" burden of showing the inadequacy of the current representative. *See Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972) (noting intervenors "need not prove that representation . . . *is* inadequate but need show merely that it *may* be").

*****

Because the intervenors satisfy all the requirements of Rule 24(a)(2), we grant the motion for intervention to pursue the petition for interlocutory review, to which we turn next.

## IV.     Interlocutory Review per Rule 23(f)

Ordinarily, an appellate court reviews only final judgments of the district court. *See* 28 U.S.C. § 1291. Federal Rule of Civil Procedure 23(f) creates an exception to this rule for review of the certification of a class action:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Interlocutory review ordinarily is appropriate only in these limited circumstances:

> (1) when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable, taking into account the district court's discretion over class certification;
> (2) when the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; and
> (3) when the district court's class certification decision is manifestly erroneous.

*In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100 (D.C. Cir. 2002). Additionally, there may be other "[s]pecial circumstances" that "do[] not fit neatly within one of the three categories" but may nonetheless support interlocutory review. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013). We strictly adhere to these criteria because "interlocutory appeals are generally disfavored

as disruptive, time-consuming, and expensive for both the parties and the courts." *Id.* at 254 (quoting *Lorazepam*, 289 F.3d at 103) (internal quotation marks omitted). As shown below, this case is no exception.

*Death Knell.* For defendants, only in the "rare instances" when "the grant of class status raises the cost and stakes of the litigation so substantially that a rational defendant would feel irresistible pressure to settle" is there a death-knell concern. *Id.* at 251 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000)). We have not previously addressed a situation in which a plaintiff raises death-knell concerns, nor is this such a case. Perhaps recognizing that, the intervenors merely imply that declining review will be the death-knell for their case. We therefore consider this claim only "[o]ut of an abundance of caution." *In re Johnson*, 760 F.3d 66, 72 (D.C. Cir. 2014).

The petitioners refer to "high expert costs and other expenses" that "substantially exceed Title VII's $300,000 cap on compensatory and punitive damages," which arguably might pressure them to settle independent of the merits if we decline review. This point is now moot vis-a-vis Brewer; he settled his individual claims before this court considered the Rule 23(f) petition, which eliminated the risk that he would face undue pressure to settle absent interlocutory review. Neither do the intervenors face a death-knell situation if we decline review. They have appealed class certification from final judgment, thereby demonstrating their intent to continue the litigation regardless whether we grant the Rule 23(f) petition.

*Fundamental Issue of Class Action Law.* Interlocutory review is appropriate if the certification decision presents an

"[1] unsettled and fundamental issue of law relating to class actions, [2] important both to the specific litigation and generally, [3] that is likely to evade end-of-the-case review." *Lorazepam*, 289 F.3d at 99-100. All these elements are necessary. *See In re Veneman*, 309 F.3d 789, 795 (D.C. Cir. 2002) (denying interlocutory review of an unsettled, fundamental, and important question of class action law that was not "likely to evade end-of-the-case review").

We have observed that the "ease with which litigants can characterize legal issues as novel . . . militate[s] in favor of narrowing the scope of Rule 23(f) review." *Lorazepam*, 289 F.3d at 105-06. Brewer's transformation of "familiar and almost routine issues," *id.* at 103, into purportedly "fundamental" issues of law is no more successful than other alchemic efforts.

He contends the district court announced a "novel rule" that plaintiffs in a Rule 23(b)(3) class action "must be eligible to obtain certification of a (b)(2) injunctive class." Had the court done so, that might indeed be novel. Rather, it reviewed facts specific to the case at hand in holding Brewer, being retired and ineligible to pursue injunctive relief, was not an adequate representative of the proposed class. This ruling is neither novel nor particularly important, nor likely to escape review at the end of the case.

*Manifest Error.* Review of a manifestly erroneous certification decision serves judicial economy "if for no other reason than to avoid a lengthy and costly trial that is for naught once the final judgment is appealed." *Lorazepam*, 289 F.3d at 105. In this case, however, with Brewer having settled his individual claims, stipulated their dismissal, and exited the lawsuit, there will be no "lengthy and costly trial" in the district

court before reviewing the class certification decision after the entry of a final judgment.

The manifest error standard is extremely difficult to meet. To date this court has never held a district court's class certification decision manifestly erroneous. *Johnson*, 760 F.3d at 72. "It is difficult to show that a class certification order is manifestly erroneous . . . simply because class actions typically involve complex facts that are unlikely to be on all fours with existing precedent." *Id.* (quoting *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005)).

Brewer first claims the district court manifestly erred in finding him inadequate to represent a class seeking damages by virtue of his ineligibility to seek injunctive relief as a former employee. This rehashes his earlier contention that the district court crafted a novel rule of class action law, which we rejected above and reject again here.

Second, Brewer contends the district court manifestly erred by misapplying *res judicata* principles to class actions when it declined to allow Brewer to split class-wide claims for damages from those for injunctive relief:

> Nor can Plaintiffs remedy Brewer's inability to adequately represent the class by simply abandoning the declaratory and injunctive relief claims. Such action would constitute claim splitting, something that is generally prohibited by the doctrine of res judicata, particularly in class actions. Courts closely scrutinize claim splitting by a class representative and do not permit such a plaintiff to 'opt to pursue certain claims on a class-wide basis while jeopardizing

> the class members' ability to subsequently pursue other claims.'

*Brewer*, No. 08-CIV-1747, at 19 (D.D.C. Sept. 30, 2015) (citations omitted). The district court could reasonably have concluded that, by abandoning injunctive relief, the "predominant" form of class-wide relief, for which Brewer was ineligible, in favor of certifying a damages class, for which he had standing, Brewer was acting contrary to the interests of absent class members. Although one could disagree with the district court's balance between the risk of preclusion and the benefit of allowing Brewer to pursue his claims on a class-wide basis, this is not the stuff of which manifest error is made.

Brewer next contends the district court manifestly erred in failing to use discretionary case management tools to mitigate its *res judicata* concerns: The court could have certified a subclass of former employees; or relied upon class members to opt-out so as to mitigate potential preclusion in a Rule 23(b)(3) action seeking damages only; or conducted a two-stage *Teamsters* proceeding with class-wide liability preceding determinations of individual relief, *see Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-61 (1977); or certified a Rule 23(c)(4) issue class on liability alone. But each of these tools is discretionary, not mandatory. The district court might have expanded on its decision not to use case management tools, but its failure to do so was not a manifest error.

Finally, Brewer contends the district court committed a manifest error by refusing to substitute alternative plaintiffs to overcome his inadequacy as a class representative. Substitution of a new named plaintiff to address the inadequacy of a class representative, a routine feature of class actions, also lies within the district court's discretion. *See Thornburgh*, 869 F.2d

at 1509. Here, the court denied Brewer's motion to amend the complaint by adding new class representatives because he filed the motion more than a year after receiving notice of his impending mandatory retirement, thereby failing to show the "good cause" needed to amend the complaint after the deadline set by a scheduling order. Brewer's lack of diligence precludes our treating the district court's exercise of discretion as a manifest error.

In a seeming afterthought, Brewer also asserts there are "special circumstances" warranting review, based upon our having said the "confluence of multiple rationales" under the *Lorazepam* framework, though insufficient individually, may nonetheless cumulatively favor interlocutory review. *See Johnson*, 760 F.3d at 76 (quoting *Freight Fuel*, 725 F.3d at 250). In this case, none of the rationales comes close to meeting any of our criteria for review: Ex nihilo nihil fit.

## V.    Conclusion

To summarize, we grant the motion for intervention and deny the petition for interlocutory review under Rule 23(f). We also grant the motion to consolidate the petition and the appeal and dismiss the appeal from final judgment, which restores the district court's jurisdiction over the case. On remand, the district court should allow a reasonable time for the intervenors to file both a motion to substitute a new class representative and a renewed motion for class certification.

*So ordered.*